IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ZOKAITES PROPERTIES, LP, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 11-259 |
| | ) | Magistrate Judge Maureen P. Kelly |
| LA MESA RACING, LLC, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

### I.    INTRODUCTION

Pending before the Court are a Motion to Remand and a Motion to Dismiss for Lack of
Subject Matter Jurisdiction Under the Doctrine of Rooker-Feldman (the "Motion to Dismiss"),
filed by the Plaintiff.  [ECF Nos. 13 & 22].  The motions were reinstated on April 26, 2012, after
being denied without prejudice in connection with an earlier stay in this case.  [ECF No. 62].
For the reasons that follow, the two pending motions will be denied.

### II.    BACKGROUND

Plaintiff Zokaites Properties, LP ("Zokaites Properties"), is a limited partnership formed
under the laws of Pennsylvania.  [ECF No. 1-2 at 3, ¶ 1].  Frank Zokaites ("Zokaites") and his
wife are its limited partners.  [ECF No. 26 at 42].  Zokaites Properties maintains its principal
place of business in Wexford, Pennsylvania.  [ECF No. 1 at ¶ 14].  Defendant La Mesa Racing,
LLC ("La Mesa"), is a limited liability company formed under the laws of New Mexico.  [*Id.* at ¶
17].  La Mesa maintains its principal place of business in Raton, New Mexico.  [*Id.*].

La Mesa was incorporated on October 19, 1998.  [ECF No. 1-2 at 12-13].  In its articles
of organization, La Mesa listed Steven Vincent ("Vincent") and William L. Siskind ("Siskind")

as its managers. [*Id.* at 16]. Butch Maki ("Maki"), a resident of Sante Fe, New Mexico, was listed as La Mesa's "initial registered agent." [*Id.*]. La Mesa owns roughly 213 acres of property located in Raton, New Mexico. [ECF No. 1-2 at 4, ¶ 4]. The property includes a horse-racing track that is not currently operational. [*Id.*]. A dilapidated club house and several grandstands are located near the track. [*Id.*].

In 2002, Siskind informed Zokaites that La Mesa was in need of money to prevent an imminent foreclosure action stemming from a mechanic's lien in the approximate amount of $118,500.00.[1] [*Id.* at 4, ¶ 7]. In addition to the money needed to prevent the holder of the lien from foreclosing on La Mesa's property, La Mesa needed funds to have the property appraised and cover other expenses. [*Id.*]. After hearing about the situation, Zokaites provided Siskind with a loan in the amount of $151,550.00. [ECF No. 8 at 100]. It was agreed that Siskind would execute a promissory note providing for the repayment of the loan, that La Mesa would guarantee the promissory note and related collateral agreement, and that the loan would be cross-collateralized with an indemnity mortgage on the "Jefferson Building." [ECF No. 1-2 at 4-5, ¶ 8]. The Jefferson Building was located in Baltimore, Maryland, and owned by Transamerican Commercial Limited ("TCL"). [*Id.*].

Siskind executed the promissory note on March 20, 2002. [*Id.* at 19-21]. The maturity date of the note was designated as two years from the date of its execution, with interest to be accrued at the rate of 8%. [*Id.* at 19]. The note further provided that the maturity date could be "automatically extended" for an additional two years, during which the total amount of the principal and interest due thereunder would be amortized over a five-year period at an interest rate of 9%. [*Id.*]. That same day, Siskind signed a document which stated that La Mesa "fully

---

[1] Given the procedural posture of this case, the allegations contained in Zokaites Properties' Complaint concerning the business interactions between the parties are assumed to be true. *West v. A&S Helicopters*, 751 F. Supp. 2d 1104, 1106 (W.D. Mo. 2010). La Mesa remains free to contest these allegations at a later time.

guarantee[d]" the promissory note and collateral agreement, and that he had "full authority" to assent to such an obligation on La Mesa's behalf.  [*Id.*].  Zokaites and Siskind both signed the collateral agreement, which provided Zokaites with an undiluted 2% ownership interest in La Mesa.  [*Id.* at 25].

On April 5, 2002, TCL executed the indemnity mortgage agreement in Zokaites' favor, thereby placing an encumbrance on the Jefferson Building.  [*Id.* at 27-30].  TCL formed 101 Charles, LLC ("101 Charles"), on July 9, 2002.  [ECF No. 1-2 at 7, ¶ 16].  On July 31, 2002, TCL recorded a deed to the Jefferson Building in favor of 101 Charles.  [*Id.*].

La Mesa used the $151,550.00 loan to satisfy the mechanic's lien, have the property appraised, and cover other expenses.  [ECF No. 1-2 at 6, ¶ 14].  No payments were made on the loan prior to June 5, 2004.  [*Id.* at 6, ¶ 15].  On that date, Jeffrey Siskind ("Jeffrey"), Siskind's son and attorney, contacted Zokaites and asked that the principal and interest payments be deferred for two years pursuant to the terms of the promissory note.  [*Id.*].  Zokaites agreed to that arrangement.  [*Id.*].  On June 24, 2004, Zokaites faxed to Siskind an invoice indicating that the principal and accrued interest owed on the loan had equaled $175,798.00 as of March 20, 2004, and that $10,947.84 was due immediately.  [*Id.* at 32].  In a handwritten notation, Zokaites stated that he agreed to let the balance accrue through March 2006.  [*Id.*].

TCL sold its interest in 101 Charles and the Jefferson Building on September 15, 2004. [*Id.* at 7, ¶ 17].  Pursuant to the terms of the indemnity mortgage agreement, TCL paid the principal and outstanding interest to Zokaites at the closing.  [*Id.*].  On September 25, 2004, Zokaites sent the promissory note back to Siskind and mistakenly marked it as having been paid in full.  [*Id.* at 7, ¶ 18].  In a letter dated October 6, 2004, Jeffrey informed Zokaites that TCL had paid the money due under the note "by means of an adjustment to the purchase price at the

closing of the sale of the remaining portion of the Jefferson Building." [*Id.* at 34]. Jeffrey asked Zokaites to assign the note to TCL so that the money owed by Siskind and La Mesa could be recovered. [*Id.*]. Three days later, Zokaites assigned the note to TCL by completing a form that had been sent with Jeffrey's letter. [*Id.* at 36].

On July 31, 2007, La Mesa filed a petition for bankruptcy relief in the United States Bankruptcy Court for the District of Maryland. [*Id.* at 7-8, ¶ 20]. Although the original petition was filed under Chapter 7 of the United States Bankruptcy Code [11 U.S.C. § 701 *et. seq.*], the case was later converted to a proceeding under Chapter 11 [11 U.S.C. § 1101 *et seq.*]. [*Id.*]. La Mesa identified the claim owed to TCL in its bankruptcy schedules. [*Id.* at 8, ¶ 21]. Zokaites Properties purchased TCL's rights under the promissory note on October 12, 2009. [*Id.* at 8, ¶ 22]. Siskind's wife and children executed a document assigning TCL's rights under the promissory note to Zokaites Properties. [*Id.* at 38]. Shortly thereafter, Zokaites Properties filed an original proof of claim in La Mesa's bankruptcy case. [ECF No. 8 at 143-144].

A hearing in the bankruptcy proceeding was held before United States Bankruptcy Judge Nancy V. Alquist on September 29, 2010. With the express consent of all parties present at the hearing, Judge Alquist stated that she would dismiss the bankruptcy petition. [ECF No. 51-3 at 10]. On October 1, 2010, she signed an order dismissing the case and barring La Mesa from filing another voluntary bankruptcy petition for a period of five years. [ECF No. 11 at 103-104]. The order, which was entered on the Bankruptcy Court's docket on October 4, 2010, had the effect of terminating the automatic stay that had been imposed on claims against La Mesa pursuant to 11 U.S.C. § 362(a). [*Id.* at 104].

Zokaites Properties commenced this action in the Court of Common Pleas of Allegheny County, Pennsylvania, on October 1, 2010, alleging that La Mesa had breached its contractual

obligations by failing to fulfill its financial responsibilities under the assignment. [ECF No. 1-2 at 8-9, ¶¶ 26-32]. As of that date, Zokaites Properties claimed that it was owed $358,583.00. [*Id.* at 9, ¶ 31]. On November 5, 2010, Zokaites Properties filed an affidavit of service in the Court of Common Pleas. [ECF No. 3 at 2-3]. In the affidavit of service, Zokaites Properties stated that a copy of its Complaint against La Mesa had been served by certified mail on Maki, La Mesa's registered agent, on October 25, 2010. [*Id.*]. La Mesa did not file a responsive pleading. Zokaites Properties moved for a default judgment on November 30, 2010, claiming that it was entitled to a monetary award of $363,888.20. [ECF No. 4 at 1-2]. The amount of damages claimed by Zokaites Properties included $5,305.20 in interest accrued between October 2, 2010, and November 30, 2010. [*Id.* at 2]. The Court of Common Pleas proceeded to enter a default judgment against La Mesa in the amount of $363,888.20. [ECF No. 5].

On December 20, 2010, Zokaites Properties filed a "notice of filing of foreign judgment" in the District Court of Colfax County, New Mexico. [ECF No. 11 at 139-140]. Zokaites Properties filed a "complaint in foreclosure of judgment lien" in the District Court of Colfax County on February 10, 2011, seeking to foreclose on La Mesa's property in New Mexico in order to satisfy the judgment entered in Pennsylvania. [*Id.* at 124-127]. La Mesa responded on February 11, 2011, by filing a petition to strike the default judgment in the Court of Common Pleas of Allegheny County. [ECF No. 6 at 1-19]. That petition was accompanied by an alternative petition to open the default judgment.[2] [*Id.*]. In support of its position, La Mesa argued, *inter alia*, that it had not received actual notice of this action until after the default judgment had already been entered. [*Id.* at 4]. Zokaites Properties responded to La Mesa's

---

[2] "A petition to strike a default judgment and a petition to open a default judgment are generally not interchangeable." *Cintas Corp. v. Lee's Cleaning Services, Inc.*, 700 A.2d 915, 918 (Pa. 1997). Unlike a petition to strike a judgment, which "can only be granted if a fatal defect appears on the face of the record," "a petition to open a judgment is an appeal to the equitable powers of the court." *Id.* at 919.

petitions on February 21, 2011, by filing an amended affidavit of service. [ECF No. 9]. Unlike the original affidavit of service, the amended affidavit of service contained a copy of an electronic signature made by "J. Flowers" on October 25, 2010. [*Id.* at 6]. At that point, it was apparent that Maki had not signed for the Complaint himself.

A hearing on La Mesa's petitions was held before Judge Timothy Patrick O'Reilly on February 22, 2011. [ECF No. 13 at ¶ 13]. On February 25, 2011, Judge O'Reilly signed an order denying La Mesa's petitions. [ECF No. 13-1]. That same day, La Mesa filed a notice of removal pursuant to 28 U.S.C. §§ 1441 and 1146, seeking to remove the action to this Court. [ECF No. 1]. In its notice of removal, La Mesa indicated that its petitions in the Court of Common Pleas were still pending. [*Id.* at ¶ 12]. Judge O'Reilly's order denying La Mesa's petitions was docketed on February 28, 2011. [ECF No. 58-2 at 4]. It was on that day that exhibits filed in support of La Mesa's notice of removal were entered onto the docket in this Court. [ECF Nos. 3-11].

On March 2, 2011, Zokaites Properties filed a motion to remand, asking that the case be returned to the Court of Common Pleas for further proceedings. [ECF No. 13 at ¶¶ 23-35]. Zokaites Properties also moved for an award of costs and counsel fees pursuant to 28 U.S.C. § 1447(c).[3] [*Id.* at ¶¶ 36-39]. That same day, La Mesa filed a motion to reopen its bankruptcy case in the Bankruptcy Court. [ECF No. 41 at ¶ 4]. La Mesa sought to reopen the bankruptcy case for the sole purpose of ascertaining whether Zokaites Properties had improperly commenced this action before Judge Alquist's order terminating the automatic stay under § 362(a) had been formally entered on the Bankruptcy Court's docket. Zokaites Properties responded on March 4, 2011, by filing a motion in the Bankruptcy Court to make the order terminating the automatic

---

[3] The applicable statutory provision provides that "[a]n order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." 28 U.S.C. § 1447(c).

stay effective as of September 29, 2010, and dismiss La Mesa's motion to reopen. [*Id.* at ¶ 5]. A hearing before Judge Alquist was scheduled for June 14, 2011. [*Id.* at ¶ 6].

A hearing concerning Zokaites Properties' motion to remand was held in this Court before Judge Nora Barry Fischer on March 22, 2011. [ECF No. 26]. On March 28, 2011, La Mesa filed a "precautionary" notice of appeal in the Court of Common Pleas of Allegheny County, thereby appealing Judge O'Reilly's order of February 25, 2011, to the Pennsylvania Superior Court. [ECF No. 19-2 at 16-19]. On March 30, 2011, Zokaites Properties filed a "motion for sanctions in the nature of a default" in this Court, accusing La Mesa of attempting to obstruct justice. [ECF No. 19 at ¶¶ 22-27]. The motion was supplemented with additional filings one day later. [ECF Nos. 20 & 21]. Zokaites Properties filed the instant Motion to Dismiss on April 3, 2011, contending that the United States Supreme Court's decisions in *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923), and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983), precluded this Court from reviewing Judge O'Reilly's order. [ECF No. 22].

La Mesa sought an order from the Pennsylvania Superior Court clarifying that the Pennsylvania courts had no jurisdiction in the case, since it had been removed to this Court. On April 19, 2011, the Superior Court denied the request without prejudice to La Mesa's ability to raise the issue of removal as a basis for challenging Judge O'Reilly's order. [ECF No. 30-1 at 2]. In an order dated April 25, 2011, the Superior Court stayed La Mesa's appeal pursuant to § 362(a). [ECF No. 37-1 at 2]. The order was issued to provide the Bankruptcy Court with an opportunity to consider the motions filed by La Mesa and Zokaites Properties, and to determine whether this action had been wrongfully commenced before the lifting of the automatic stay. Judge Fischer denied Zokaites Properties' "motion for sanctions in the nature of default" on

April 27, 2011. [ECF No. 34]. In a Memorandum Opinion and Order dated May 19, 2011, Judge Fischer stayed this action pending the resolution of the parties' motions before the Bankruptcy Court and La Mesa's appeal before the Superior Court. [ECF No. 46]. Zokaites Properties' Motion to Remand and Motion to Dismiss were denied without prejudice. [ECF No. 47]. Zokaites Properties filed a motion for reconsideration on May 26, 2011, asking this Court to remand the case to the Court of Common Pleas pursuant to *Rooker* and *Feldman*. [ECF No. 48]. The motion for reconsideration was denied on June 9, 2011. [ECF No. 50].

The scheduled hearing was held in the Bankruptcy Court before Judge Alquist on June 14, 2011. [ECF No. 51-3]. During the hearing, Judge Alquist stated that her order of October 1, 2010, dismissing the bankruptcy case, and the entry of that order on the docket three days later, had merely reduced her earlier decision to writing. [*Id.* at 12]. She clarified that the automatic stay had been terminated on September 29, 2010, and that Zokaites Properties had not violated the automatic stay by commencing this action against La Mesa on October 1, 2010. [*Id.* at 12-14]. La Mesa's motion to reopen the bankruptcy case was denied. [ECF No. 51-2 at 2].

On April 16, 2012, the Superior Court quashed La Mesa's appeal. [ECF No. 58-2 at 3]. Relying on the language in 28 U.S.C. § 1446(d) directing a state court to "proceed no further" in a removed case "unless and until the case is remanded," the Superior Court held that the Pennsylvania courts could not entertain further proceedings in this case "unless and until" a remand was ordered by this Court. [*Id.* at 8-21]. In so holding, the Superior Court specifically recognized that Judge Fischer had denied Zokaites Properties' motion to remand without prejudice and retained jurisdiction over the matter. [*Id.* at 20]. The appeal was quashed without prejudice to La Mesa's ability to "renew its challenge" to Judge O'Reilly's order of February 25, 2011. [*Id.* at 21].

Zokaites Properties moved for a termination of the stay, and the reinstatement of its earlier Motion to Remand and Motion to Dismiss, on April 25, 2012. [ECF No. 61]. The motion was granted one day later. [ECF No. 62]. The previous order staying the case was vacated, the two motions previously filed by Zokaities Properties were reinstated, and a status conference was scheduled for May 3, 2012. [*Id.*]. At the status conference, Judge Fischer advised the parties that the two motions filed by Zokaities Properties needed to be resolved before any determination could be made as to whether the default judgment entered by the Court of Common Pleas should be reopened or set aside. [*Id.*].

On May 18, 2012, Judge Fischer disqualified herself from this case pursuant to 28 U.S.C. § 455. The case was ultimately reassigned to the undersigned. Both parties have consented to the jurisdiction of a United States Magistrate Judge. [ECF Nos. 68, 69]. The reinstated Motion to Remand and Motion to Dismiss filed by Zokaites Properties are the subject of this Memorandum Opinion.

## III.    THE MOTION TO DISMISS

A motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(1) challenges a federal court's subject-matter jurisdiction to entertain a plaintiff's claims. FED. R. CIV. P. 12(b)(1). "At issue in a Rule 12(b)(1) motion is the court's 'very power to hear the case.'" *Judkins v. HT Window Fashions Corp.*, 514 F. Supp. 2d 753, 759 (W.D. Pa. 2007), quoting *Mortensen v. First Federal Savings & Loan Association*, 549 F.2d 884, 891 (3d Cir. 1977). The party asserting that jurisdiction exists bears the burden of showing that the matter is properly before the federal court. *Development Finance Corp. v. Alpha Housing & Health Care*, 54 F.3d 156, 158 (3d Cir. 1995).

Congress has given United States district courts "original jurisdiction" in certain categories of cases. 28 U.S.C. §§ 1331, 1332(a). Since the subject-matter jurisdiction exercised by federal district courts is "original" in nature, such courts are generally "precluded from exercising appellate jurisdiction over final state-court judgments." *Lance v. Dennis*, 546 U.S. 459, 463 (2006)(*per curiam*). Unlike "inferior" federal courts, the United States Supreme Court has jurisdiction under 28 U.S.C. § 1257(a) to review "[f]inal judgments or decrees rendered by the highest court of a State in which a decision could be had . . . where the validity of a treaty or statute of the United States is drawn in question or where the validity of a statute of any State is drawn in question on the ground of its being repugnant to the Constitution, treaties, or laws of the United States, or where any title, right, privilege, or immunity is specially set up or claimed under the Constitution or the treaties or statutes of, or any commission held or authority exercised under, the United States." 28 U.S.C. § 1257(a). In *Rooker*, the Supreme Court construed a statutory predecessor to § 1257(a) to vest *exclusive* jurisdiction in the Supreme Court to review decisions rendered by state courts. *Rooker*, 263 U.S. at 416. Speaking through Justice Van DeVanter, the Supreme Court explained that because the jurisdiction possessed by district courts was "strictly original," a district court could not exercise *de facto* appellate jurisdiction by entertaining a supposedly "original" action brought by an individual who sought only to reverse an earlier judgment rendered by a state tribunal. *Id.* The Supreme Court reaffirmed this principle in *Feldman* by declaring that district courts had no jurisdiction to entertain "challenges to state-court decisions in particular cases arising out of judicial proceedings."[4] *Feldman*, 460 U.S. at 486.

---

[4] The District of Columbia Court of Appeals, which rendered the "state-court decision" at issue in *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983), is treated as the "highest court of a State" for purposes of § 1257(a). 28 U.S.C.§ 1257(b).

The decisions in *Rooker* and *Feldman* gave rise to the so-called "*Rooker-Feldman* doctrine." *Lampe v. Lampe*, 665 F.3d 506, 518 n. 15 (3d Cir. 2011). Prior to the Supreme Court's decision in *Exxon Mobil Corp. v. Saudi Basic Industries Corp.*, 544 U.S. 280, 283 (2005), some federal courts erroneously construed the doctrine "to extend far beyond the contours of the *Rooker* and *Feldman* cases." In *Exxon Mobil*, the United States Supreme Court narrowed the reach of the doctrine by stating as follows:

> The *Rooker-Feldman* doctrine, we hold today, is confined to cases of the kind from which the doctrine acquired its name: cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments. *Rooker-Feldman* does not otherwise override or supplant preclusion doctrine or augment the circumscribed doctrines that allow federal courts to stay or dismiss proceedings in deference to state-court actions.

*Exxon Mobil*, 544 U.S. at 284. In a later portion of its opinion, the Supreme Court made the following observations:

> *Rooker* and *Feldman* exhibit the limited circumstances in which this Court's appellate jurisdiction over state-court judgments, 28 U.S.C. § 1257, precludes a United States district court from exercising subject-matter jurisdiction in an action it would otherwise be empowered to adjudicate under a congressional grant of authority, e.g., [28 U.S.C.] § 1330 (suits against foreign states), § 1331 (federal question), and § 1332 (diversity). In both cases, the losing party in state court filed suit in federal court after the state proceedings ended, complaining of an injury caused by the state-court judgment and seeking review and rejection of that judgment. Plaintiffs in both cases, alleging federal-question jurisdiction, called upon the District Court to overturn an injurious state-court judgment. Because § 1257, as long interpreted, vests authority to review a state court's judgment solely in this Court, e.g., *Feldman*, 460 U.S., at 476, 75 L.Ed.2d 206, 103 S.Ct. 1303; *Atlantic Coast Line R. Co. v. Locomotive Engineers*, 398 U.S. 281, 286, 26 L.Ed.2d 234, 90 S.Ct. 1739 (1970); *Rooker*, 263 U.S., at 416, 68 L.Ed.2d 362, 44 S.Ct. 149, the District Courts in *Rooker* and *Feldman* lacked subject-matter jurisdiction. See *Verizon Md. Inc.* [*v. Public Service Commission*], 535 U.S. [635], 644, n. 3, 152 L.Ed.2d 871, 122 S.Ct. 1753 [(2002)]("The *Rooker-Feldman* doctrine merely recognizes that 28 U.S.C. § 1331 is a grant of original jurisdiction, and does not authorize district courts to exercise appellate jurisdiction over state-court judgments, which Congress has reserved to this Court, see 28 U.S.C. § 1257(a).").

*Id.* at 291-292 (footnote omitted). In the aftermath of *Exxon Mobil*, the Supreme Court has continued to emphasize "the narrow ground" occupied by the *Rooker-Feldman* doctrine. *Skinner v. Switzer*, ___U.S. ___, ___, 131 S. Ct. 1289, 1297 (2011), quoting *Exxon Mobil*, 544 U.S. at 284.

Zokaites Properties contends that the *Rooker-Feldman* doctrine deprives this Court of subject-matter jurisdiction in the instant case. [ECF No. 24 at 2-5]. This argument is based on the premise that La Mesa seeks an improper "appeal" of the Court of Common Pleas' decision denying the petitions to strike and open the default judgment. [ECF No. 22 at ¶ 10]. In its notice of removal, La Mesa averred that those petitions were still pending. [ECF No. 1 at ¶ 12]. Judge O'Reilly's order denying the petitions was dated February 25, 2011. [ECF No. 13-1]. La Mesa's notice of removal was filed that same day. [ECF No. 1]. The sequence of these events is disputed by the parties. As the Superior Court noted in its decision quashing La Mesa's appeal, the precise order in which these events occurred cannot be definitively gleaned from the record. [ECF No. 58-2 at 18-19]. That factual inquiry, however, is inconsequential for purposes of the *Rooker-Feldman* doctrine.

Under the *Rooker-Feldman* doctrine, federal district courts lack subject-matter jurisdiction to entertain *collateral attacks* on judgments rendered by state courts. *Weaver v. Texas Capital Bank N.A.*, 660 F.3d 900, 904 (5th Cir. 2011). When a losing party in a state-court action attempts to challenge the adverse judgment by commencing a separate action in a federal district court, he or she acts *contrary* to the legislative scheme providing only the Supreme Court with jurisdiction to review the state court's decision. *Rooker*, 263 U.S. at 416 ("Under the legislation of Congress, no court of the United States other than this Court could entertain a proceeding to reverse or modify the judgment for errors of that character."). In contrast, a

defendant who files a notice of removal acts *within* the statutory scheme providing for the removal of the state-court action to a federal district court. 28 U.S.C. §§ 1441, 1446. The *Rooker-Feldman* doctrine does not operate as a free-floating limitation on a district court's subject-matter jurisdiction whenever a previous decision of a state court is implicated. Instead, it operates to give effect to the legislative enactments governing the jurisdiction that may be exercised by federal courts. *Feldman*, 460 U.S. at 486. The statutory provisions governing removal, which expressly provide defendants with the right to select a federal forum under certain circumstances, must be given effect as well. *Exxon Mobil*, 544 U.S. at 292, n. 8 ("Congress, if so minded, may explicitly empower district courts to oversee certain state-court judgments and has done so, most notably, in authorizing federal habeas review of state prisoners' petitions."); *Schiavo ex rel Schindler v. Schiavo*, 404 F.3d 1270, 1281 (11th Cir. 2005)(Tjoflat, J., dissenting)("Thus, it was completely within Congress's power to make an exception to the general rule regarding the power of the district courts to review final state court decisions, and it is clear from the face of the statute that Congress intended to do so."). Where removal is otherwise proper, the entry of a default judgment by a state court prior to removal does not deprive a federal district court of jurisdiction to preside over the removed case. *Motley v. Option One Mortgage Corp.*, 620 F. Supp. 2d 1297, 1302 (M.D. Ala. 2009); *Slaieh v. Zeineh*, 539 F. Supp. 2d 864, 866 n. 2 (S.D. Miss. 2008); *Hawes v. Cart Products, Inc.*, 386 F. Supp. 2d 681, 686 (D.S.C. 2005); *Tarbell v. Jacobs*, 856 F. Supp. 101, 104 (N.D.N.Y. 1994).

It is clear from the language in *Exxon Mobil* that the *Rooker-Feldman* doctrine can bar a federal-court action only when that action is filed after the related state-court proceedings have already "ended." *Exxon Mobil*, 544 U.S. at 291. Some federal courts have read this language to mean that the doctrine can come into play only if *all* related state-court proceedings, including

*appellate* proceedings, are concluded before the commencement of the federal-court action.[5] *Green v. Jefferson County Commission*, 563 F.3d 1243, 1249-1250 (11th Cir. 2009); *Nicholson v. Shafe*, 558 F.3d 1266, 1275-1276 (11th Cir. 2009); *Guttman v. G.T.S. Khalsa*, 446 F.3d 1027, 1032 (10th Cir. 2006); *Dornheim v. Sholes*, 430 F.3d 919, 923-924 (8th Cir. 2005); *Federacion de Maestros de Puerto Rico v. Junta De Relaciones Del Trabajo de Puerto Rico*, 410 F.3d 17, 27 (1st Cir. 2005). Under this reading of *Exxon Mobil*, there is no conceivable way that the *Rooker-Feldman* doctrine could preclude this Court's exercise of jurisdiction in the present case. La Mesa's notice of removal was filed when the default judgment entered by the Court of Common Pleas of Allegheny County was still subject to appellate review. In *Caldwell v. Gutman, Mintz, Baker & Sonnenfeldt*, 701 F. Supp. 2d 340, 347-348 (E.D.N.Y. 2010), the United States District Court for the Eastern District of New York held that state-court proceedings have "ended" for purposes of the *Rooker-Feldman* doctrine when the decision of a state court is reduced to a "judgment," regardless of whether it remains subject to appellate review. Under that line of reasoning, the relevant state-court proceedings "ended" when the Court of Common Pleas entered a default judgment in favor of Zokaites Properties and against La Mesa. In this case, however, the Court has no occasion to consider which reading of *Exxon Mobil* is correct. Even if it is assumed that the position taken in *Caldwell* was correct, the *Rooker-Feldman* doctrine cannot operate as a bar to this Court's exercise of jurisdiction under the present circumstances.

The "judgment" entered by the Court of Common Pleas could preclude this Court's exercise of jurisdiction only if it was rendered before the *commencement* of this action. *Exxon Mobil*, 544 U.S. at 284. That is simply impossible in this instance, since the action in which the "judgment" was rendered is the *same action* presently before the Court. When a case pending in

---

[5] It is worth noting that in both *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 414-416 (1923), and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 468 (1983), the relevant federal-court actions were commenced *after* the individuals bringing those actions had already been denied relief by a court of last resort.

a state court is removed to a federal district court, there is no need for the plaintiff to file a new complaint. FED. R. CIV. P. 81(c)(2). An action initially "commenced" in a state court becomes "federalized" when a notice of removal is filed. *Tehan v. Disability Management Services, Inc.*, 111 F. Supp. 2d 542, 547-548 (D.N.J. 2000). The action proceeds as if every order entered by the state court had been entered by the federal district court. *Nissho-Iwai American Corp. v. Kline*, 845 F.2d 1300, 1303-1304 (5th Cir. 1988). The federal district court exercises "original" (rather than "appellate") jurisdiction. *Freeman v. Bee Machine Co.*, 319 U.S. 448, 452 (1943). Since this action *is* the action initially "commenced" in the Court of Common Pleas, the "judgment" rendered by the Court of Common Pleas must be treated as if it had been rendered by this Court.[6] *Nissho-Iwai American Corp.*, 845 F.2d at 1303-1304.

Insofar as the *Rooker-Feldman* doctrine is concerned, a single action cannot bar itself. *Moore v. City of Asheville*, 396 F.3d 385, 392 n. 2 (4th Cir. 2005)(explaining that the *Rooker-Feldman* doctrine operates "to bar any *proceeding* that would functionally amount to a *lateral* appeal to a United States district court")(emphasis added). The "commencement" of two distinct actions is a prerequisite to the doctrine's application. *Motley*, 620 F. Supp. 2d at 1302 ("Therefore, because there was no final state court judgment, and the Defendants have not *commenced a new action* in federal court, the *Rooker-Feldman* doctrine does not preclude this court from accepting removal jurisdiction in this case.")(emphasis added). In determining that this Court's retention of jurisdiction over this matter precluded the Pennsylvania courts from proceeding further, the Superior Court recognized that this case cannot be treated as two separate cases. [ECF No. 58-2 at 19]. Given that Zokaites Properties "commenced" this action when it sued La Mesa in the Court of Common Pleas, the "judgment" rendered by the Court of Common

---

[6] This fact distinguishes the instant case from *In Re: Knapper*, 407 F.3d 573, 578-583 (3d Cir. 2005), which involved a party's attempt to *collaterally* attack a state-court judgment in a bankruptcy proceeding.

Pleas did not predate this action's "commencement." *Exxon-Mobil*, 544 U.S. at 284.

Accordingly, La Mesa's removal of the action to this Court "encounters no *Rooker-Feldman*

shoal." *Skinner*, 131 S. Ct. at 1297.

The Full Faith and Credit Clause[7] of the United States Constitution incorporates the

doctrines of *res judicata* and collateral estoppel as the law of our Union.[8] *Riley v. New York*

*Trust Co.*, 315 U.S. 343, 349 (1942). That constitutional provision, however, does not apply to

federal courts. *Kremer v. Chemical Construction Corp.*, 456 U.S. 461, 483 n. 24 (1982)

(explaining that federal courts are "not included within the constitutional provision"). Instead, it

limits only the prerogatives of "each State." U.S. CONST., ART. IV, § 1. When a judgment is

rendered by a state tribunal, federal courts are statutorily required to accord that judgment

preclusive effect under 28 U.S.C. § 1738. The relevant statutory language provides that "[t]he

Acts of legislature of any State, Territory, or Possession of the United States . . . shall have the

same full faith and credit in every court within the United States and its Territories and

Possessions as they have by law or usage in the courts of such State, Territory or Possession

from which they are taken." 28 U.S.C. § 1738. "This statute has long been understood to

encompass the doctrines of *res judicata*, or 'claim preclusion,' and collateral estoppel, or 'issue

preclusion.'" *San Remo Hotel, L.P. v. City & County of San Francisco*, 545 U.S. 323, 336

(2005) (emphasis added). Consequently, a federal court must give a judgment rendered by a

---

[7] "Full Faith and Credit shall be given in each State to the public Acts, Records, and judicial Proceedings of every other State; And the Congress may by general Laws prescribe the Manner in which such Acts, Records and Proceedings shall be proved, and the Effect thereof." U.S. CONST., ART. IV, § 1.

[8] "Under *res judicata*, a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action. Under collateral estoppel, once a court has decided an issue of fact or law necessary to its judgment, that decision may preclude relitigation of the issue in a suit on a different cause of action involving a party to the first case." *Allen v. McCurry*, 449 U.S. 90, 94 (1980)(citations omitted; emphasis added).

state court the same preclusive effect that it would be accorded in the courts of the relevant state. *Parsons Steel, Inc. v. First Alabama Bank*, 474 U.S. 518, 523 (1986).

Zokaites Properties relies on principles of preclusion in support of its argument that this case is subject to dismissal under the *Rooker-Feldman* doctrine. [ECF No. 22 at ¶ 12; ECF No. 24 at 5]. This reliance, however, is misplaced. Unlike the *Rooker-Feldman* doctrine, preclusion does not affect a federal court's subject-matter jurisdiction. *Exxon Mobil*, 544 U.S. at 293; FED. R. CIV. P. 8(c)(1)(listing *res judicata* as an affirmative defense). The argument advanced by Zokaites Properties incorrectly conflates the jurisdictional question with the potential availability of affirmative defenses. *Lance*, 546 U.S. at 466 (remarking that "*Rooker-Feldman* is not simply preclusion by another name"). Nonetheless, the United States Court of Appeals for the Third Circuit permits affirmative defenses to be asserted by motion under certain circumstances. *Robinson v. Johnson*, 313 F.3d 128, 135 n. 3 (3d Cir. 2002). *Res judicata* is among the defenses that can be raised prior to the filing of an answer. *Williams v. Murdoch*, 330 F.2d 745, 749 (3d Cir. 1964). For this reason, the issue of preclusion can be considered at this stage. Since that issue has no bearing on the Court's subject-matter jurisdiction, the portion of Zokaites Properties' motion pertaining to preclusion will be treated as a motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6).[9] *Rycoline Products, Inc. v. C&W Unlimited*, 109 F.3d 883, 886 (3d Cir. 1997).

In support of its motion, Zokaites Properties contends that § 1738[10] requires this Court to give preclusive effect to the "judgment" rendered by the Court of Common Pleas. [ECF No. 22

---

[9] Under Rule 12(b)(6), a complaint is subject to dismissal if it "fail[s] to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6).

[10] Although Zokaites Properties incorrectly relies on the Full Faith and Credit Clause, its argument will be considered under § 1738. [ECF No. 22 at ¶ 12; ECF No. 24 at 5]; *Kremer v. Chemical Construction Corp.*, 456 U.S. 461, 483 n. 24 (1982)(explaining that § 1738 was enacted "to implement the Full Faith and Credit Clause" and

at ¶ 12; ECF No. 24 at 5].  It is not entirely clear whether Zokaites Properties is referring to the initial entry of default judgment against La Mesa or to Judge O'Reilly's subsequent order denying La Mesa's petitions to strike and open that judgment.  Any preclusion-related argument based on the order denying the petitions has been mooted by the Superior Court's determination that Judge O'Reilly lacked jurisdiction to issue that order.[11]  [ECF No. 58-2 at 20].  Moreover, the argument put forth by Zokaites Properties lacks merit even if it is based on the initial entry of default judgment against La Mesa.  *Res judicata* "bars a *later action* on all or part of the claim which was the subject of the *first action*."  *Balent v. City of Wilkes-Barre*, 669 A.2d 309, 313 (Pa. 1995)(emphasis added).  Its application presupposes that two separate cases are involved. *Id.* ("Any final, valid judgment on the merits by a court of competent jurisdiction precludes any *future suit* between the parties or their privies on the same cause of action")(emphasis added); *Griffin v. Central Sprinkler Corp.*, 823 A.2d 191, 195 (Pa.Super.Ct. 2003)(explaining that the related doctrine of collateral estoppel "does not apply to 'prior determinations' within the same case").  As discussed earlier, the instant action is the *same action* that Zokaites Properties initially commenced in the Court of Common Pleas.[12]  *Motley*, 620 F.Supp.2d at 1302 (describing proceedings conducted before a federal court in a removed case as "a continuation of the proceedings" previously conducted before a state court).  Therefore, § 1738 provides no logical reason for dismissing this case.

"specifically to insure that federal courts, not included within the constitutional provision, would be bound by state judgments").

[11] It is axiomatic that a decision later reversed on appeal has no *res judicata* effect.  *O'Hara Sanitation Co. v. Commonwealth of Pennsylvania*, 557 A.2d 453, 455 (Pa.Commw.Ct. 1989)("The doctrine of *res judicata* requires that a prior judicial determination be afforded preclusive effect in Pennsylvania 'unless and until' it is reversed on appeal."), quoting *Philadelphia Electric Co. v. Pennsylvania Public Utility Commission*, 433 A.2d 620, 626 (Pa.Commw.Ct. 1981).

[12] Because only one action is involved, the Court has no occasion to consider the extent to which a default judgment entered by a Pennsylvania court must be given preclusive effect in a separate action.  *McGill v. Southwark Realty Co.*, 828 A.2d 430, 435 (Pa.Commw.Ct. 2003).

For the foregoing reasons, the Motion to Dismiss filed by Zokaites Properties will be denied.  [ECF No. 22].  Since the *Rooker-Feldman* doctrine does not independently entitle Zokaites Properties to the dismissal of this action, the Court will proceed to consider the Motion to Remand.  [ECF Nos. 13 & 65].  At this juncture, the inquiry will focus on whether La Mesa's removal of the case from the Court of Common Pleas of Allegheny County to this Court was otherwise proper.

## IV.   THE MOTION TO REMAND

The timeliness of a notice of removal is governed by 28 U.S.C. § 1446(b)(1), which provides:

> The notice of removal of a civil action or proceeding shall be filed within 30 days after the receipt by the defendant, *through service or otherwise*, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based, or within 30 days after the service of summons upon the defendant if such initial pleading has then been filed in court and is not required to be served on the defendant, whichever period is shorter.

28 U.S.C. § 1446(b)(emphasis added).

In support of its Motion to Remand, Zokaites Properties advances two arguments relating to the issue of timeliness.  First, relying on the four-month period of time elapsing between the alleged service of the complaint on October 25, 2010, and the filing of the notice of removal on February 25, 2011, Zokaites Properties argues that La Mesa failed to remove this case within the thirty-day period established by § 1446(b).  [ECF No. 13 at ¶¶ 23-25].  Second, Zokaites Properties contends that La Mesa had "actual or constructive notice" of this action as early as October 1, 2010, thereby satisfying § 1446(b)'s "receipt" requirement more than thirty days before the filing of the notice of removal.  [*Id.* at ¶¶ 26-31].

The second argument advanced by Zokaites Properties is foreclosed by *Murphy Brothers, Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344 (1999).  Interpreting § 1446(b) in *Murphy*

*Brothers*, the Supreme Court rejected a reading of the phrase "through service or otherwise" that would have permitted the thirty-day removal period to begin upon a defendant's "mere receipt of [a] complaint unattended by any formal service." *Murphy Brothers*, 526 U.S. at 348. Discussing § 1446(b)'s application in relation to the procedural requirements applicable in different States, the Supreme Court explained:

> First, if the summons and complaint are served together, the 30-day period for removal runs at once. Second, if the defendant is served with the summons but the complaint is furnished to the defendant sometime after, the period for removal runs from the defendant's receipt of the complaint. Third, if the defendant is served with the summons and the complaint is filed in court, but under local rules, service of the complaint is not required, the removal period runs from the date the complaint is made available through filing. Finally, if the complaint is filed in court prior to any service, the removal period runs from the service of the summons.

*Id.* at 354. Given the holding in *Murphy Brothers*, it is clear that "[a]n individual or entity named as a defendant is not obliged to engage in litigation unless notified of the action, and brought under a court's authority, *by formal process*." *Id.* at 347 (emphasis added). The thirty-day removal period was not triggered by La Mesa's alleged "actual or constructive notice" of this action. [ECF No. 13 at ¶ 26]. The dispositive question is whether La Mesa was properly served with "formal process" on or before October 25, 2010. This issue is governed by Pennsylvania law. *Cmiech v. Electrolux Home Products, Inc.*, 520 F. Supp. 2d 671, 674 (M.D. Pa. 2007).

Maki accepted his appointment as La Mesa's "initial registered agent" on October 19, 1998. [ECF No. 8 at 20]. Maki's home address was listed on La Mesa's website. [*Id.* at 60-61]. Zokaites Properties avers that, on October 1, 2010, it sent copies of the complaint to Maki's home address by both regular and certified mail.[13] [ECF No. 13 at ¶ 3]. Maki did not claim the

---

[13] The documentary record indicates that the mailings incorrectly identified Maki as "Brett Maki" rather than as "Butch Maki." [ECF No. 11 at 107-108].

certified mail, and the attached "green card" described the parcel of mail as "unclaimed." [*Id.*]. The record contains a letter from Zokaites Properties' counsel to Maki dated October 12, 2010. [ECF No. 11 at 110]. The letter requested that Maki acknowledge his receipt of the Complaint in writing. [*Id.*]. Maki apparently never provided such a written acknowledgement. [ECF Nos. 13 & 14 at ¶ 4]. The letter sent to Maki was accompanied by another copy of the Complaint. [ECF No. 13 at ¶ 4].

On October 23, 2010, Zokaites Properties sent a copy of the Complaint to Maki by certified mail with a receipt requested. [ECF No. 9 at 5]. This mailing was addressed to Maki's public and governmental consulting business, which was called "Butch Maki & Associates." [*Id.*; ECF No. 26 at 66]. The United States Postal Service ("USPS") has a "Track & Confirm" feature on its website, which permits an individual to confirm that a piece of certified mail has been received by its intended recipient. https://www.usps.com/ (as visited on June 15, 2012). The "Track & Confirm" printout referencing the Complaint mailed to Maki, which is contained in the record, indicates that the Complaint was delivered at 3:54 p.m. on October 25, 2010. [ECF No. 3 at 4]. The record also contains a copy of an electronic signature made by "J. Flowers" at that time. [ECF No. 9 at 6]. Zokaites Properties retrieved this electronic signature from the USPS because no "green card" verifying Maki's receipt of the Complaint had been provided. [ECF No. 26 at 10-11, 33]. At the hearing conducted before Judge Fischer on March 22, 2011, Jeffrey identified Jennifer Flowers ("Flowers") as an employee of Maki's business. [*Id.* at 66]. The website maintained by "Butch Maki & Associates" presently identifies Flowers as an "Office Manager/Executive Asst." http://www.makiassociates.com/contact-us/ (as visited on July 31, 2012). Flowers' electronic signature was first made available to the Court of Common

Pleas on February 21, 2011, when Zokaites Properties filed its amended affidavit of service. [ECF No. 9].

Under Pennsylvania law, a party seeking a default judgment must provide the opposing party with written notice of his or her intent to move for such a judgment at least ten days before filing a "praecipe for entry of judgment by default." *Miller Electric Co. v. DeWeese*, 907 A.2d 1051, 1053 n. 1 (Pa. 2006); Pa. R.C.P. 237.1(a)(2). Zokaites Properties sent written "notice[s] of default" to both Maki's home and business addresses on November 16, 2010. [ECF No. 11 at 51-55]. The notices were sent by certified mail. [*Id.*]. The record contains a copy of a signed "green card" verifying receipt of the notice sent to Maki's business. [*Id.* at 53]. Nonetheless, the illegible signature does not appear to be that of Maki himself. [*Id.*]. La Mesa did not respond to the notice, and a default judgment was entered in favor of Zokaites Properties on November 30, 2010. [ECF No. 5].

La Mesa took its first defensive action on February 11, 2011, when it filed its petitions to strike and open the default judgment. Vincent became the sole owner of La Mesa at some point prior to the commencement of this action. [ECF No. 8 at 63, ¶ 2]. In an affidavit dated February 8, 2011, Vincent stated that Maki had never notified him of this action, and that he had first learned of it from a third party on February 1, 2011.[14] [*Id.* at 63, ¶¶ 3-5]. Maki executed his own affidavit two days later. [*Id.* at 140-141]. In the second and third paragraphs of his affidavit, Maki stated as follows:

> 2.      I received some documents addressed to me as the Registered Agent for LA MESA RACING, LLC ("LA MESA"). I received the documents many months after I had advised Mr. Bill Siskind that I had resigned as the Registered Agent of LA MESA. At approximately the same time as I received the documents, Jeff Siskind, who I believed to be counsel for Zokaites Properties,

---

[14] The affidavit is mistakenly dated February 8, 2010, rather than February 8, 2011. [ECF No. 8 at 64]. Since the affidavit refers to events occurring as late as February 1, 2011, it was obviously executed on February 8, 2011. [*Id.* at ¶ 1].

called me to advise me that the documents would be coming. Mr. Jeff Siskind asked me to forward the documents to him, and said it was a "friendly legal action" or words to that effect. During this conversation, I again advised that I had resigned as registered agent for LA MESA. I did not believe at this time that I was the registered agent for LA MESA. I then forwarded the documents to Mr. Jeff Siskind.

3. I never contacted Stephen Vincent about the documents I received. Neither Bill Siskind nor Jeff Siskind ever advised me that Mr. Vincent had become the sole owner of LA MESA.

[*Id.* at 140-141, ¶¶ 2-3]. During the hearing conducted on March 22, 2011, Jeffrey testified that Maki had been in New Hampshire in October 2010, that he had spoken with Maki about this action at that time, and that Maki had expressed an intention to have someone else retrieve the filings. [ECF No. 26 at 56-57]. Jeffrey stated that Maki had offered to send copies of the filings to him, but that he had advised Maki to fulfill his obligations as La Mesa's registered agent. [*Id.* at 58]. When questioned about Maki's alleged resignation, Jeffrey testified that Maki had been under the mistaken impression that his duties as La Mesa's registered agent had ceased, and that he had verbally corrected Maki's incorrect belief. [*Id.* at 58-59]. In any event, it is clear from the record that Maki never informed Vincent that Zokaites Properties had commenced this action against La Mesa.

Pennsylvania Rule of Civil Procedure 403 provides:

**Rule 403. Service by Mail**

If a rule of civil procedure authorizes original process to be served by mail, a copy of the process shall be mailed to the defendant by any form of mail requiring a receipt signed by the defendant or his authorized agent. Service is complete upon delivery of the mail.

(1) If the mail is returned with notation by the postal authorities that the defendant refused to accept the mail, the plaintiff shall have the right of service by mailing a copy to the defendant at the same address by ordinary mail with the return address of the sender appearing thereon. Service by ordinary mail is complete if the mail is not returned to the sender within fifteen days after mailing.

> (2) If the mail is returned with notation by the postal authorities that it was unclaimed, the plaintiff shall make service by another means pursuant to these rules.

Pa.R.C.P. 403.[15]  Rule 403's distinction between "refused" pieces of mail and "unclaimed" pieces of mail is based on the idea that, unlike a defendant's intentional refusal to accept service of process, his or her "failure to claim" a piece of mail does not necessarily suggest that he or she "has deliberately sought to avoid receipt of process."  *Kucher v. Fischer*, 167 F.R.D. 397, 398 (E.D. Pa. 1996).  When Zokaites Properties sent Maki a copy of the Complaint by certified mail on October 1, 2010, the notation on the attached "green card" indicated that the mail had been "unclaimed."  [ECF No. 11 at 107].  Consequently, the copy of the Complaint sent to Maki's residence on October 12, 2010, did not constitute valid service.  In accordance with Rule 403(2), Zokaites Properties was required to "make service by another means."  Pa.R.C.P. 403(2).

Under Pennsylvania Rule of Civil Procedure 405(b), "[a] return of service [must] set forth the date, time, place and manner of service, the identity of the person served and any other facts necessary for [a] court to determine whether proper service has been made."  Pa. R.C.P. 405(b).  Rule 405(c) provides:

> (c) Proof of service by mail under Rule 403 shall include a return receipt signed by the defendant or, if the defendant has refused to accept mail service and the plaintiff thereafter has served the defendant by ordinary mail,
>> (1) the returned letter with the notation that the defendant refused to accept delivery, and
>> (2) an affidavit that the letter was mailed by ordinary mail and was not returned within fifteen days after mailing.

Pa. R.C.P. 405(c).  The affidavit of service filed by Zokaites Properties on November 5, 2010, did not include a "return receipt" signed by Maki.  [ECF No. 11 at 46-49].  Instead, it included only the printout of the USPS' "Track & Confirm" screen verifying that the Complaint had been

---

[15] Pennsylvania Rule of Civil Procedure 404(2) specifically permits parties residing outside of Pennsylvania to be served by mail.  Pa. R.C.P. 404(2).  Moreover, 42 Pa. Cons. Stat. § 5323(a)(3) provides for service upon an out-of-state party "[b]y any form of mail addressed to the person to be served and requiring a signed receipt."

"delivered" at 3:54 P.M. on October 25, 2010. [*Id.* at 49]. The identity of the recipient was not disclosed. [*Id.*].

A plaintiff's failure to strictly comply with Rule 405 does not preclude a Pennsylvania court from exercising *in personam* jurisdiction over a defendant who has been properly served. *Cintas Corp. v. Lee's Cleaning Services, Inc.*, 700 A.2d 915, 918 (Pa. 1997). The *fact* of service is what matters in this context. *Id.*; *Knickerbocker Russell Co., Inc. v. Crawford*, 936 A.2d 1145, 1147-1148 (Pa.Super.Ct. 2007). Zokaites Properties filed an amended affidavit of service on February 21, 2011. [ECF No. 11 at 112-118]. This filing was submitted in opposition to La Mesa's petitions to strike and open the default judgment. The amended affidavit of service included a copy of Flowers' electronic signature and a verification that she had signed for the certified mail at 3:54 P.M. on October 25, 2010. [*Id.* at 117]. The parties do not appear to dispute that Flowers, rather than Maki, provided her signature and retrieved the complaint. The critical question is whether Flowers' receipt of the complaint constituted the "formal service" necessary to trigger § 1446(b)'s thirty-day clock. *Murphy Brothers*, 526 U.S. at 348.

The issue is governed by Pennsylvania Rule of Civil Procedure 424, which provides:

**Rule 424. Corporations and Similar Entities**

Service of original process upon a corporation or similar entity shall be made by handing a copy to any of the following persons provided the person served is not a plaintiff in the action:
(1) an executive officer, partner or trustee *of the corporation* or similar entity, or
(2) the manager, clerk or other person for the time being in charge of any regular place of business or activity *of the corporation* or similar entity, or
(3) an agent authorized *by the corporation* or similar entity in writing to receive service of process for it.

Pa. R.C.P. 424 (emphasis added). Where a plaintiff attempts to establish that an out-of-state corporation has been served by certified mail, he or she must also show that service has been

25

"made upon a proper agent *of the corporation*." *McKinnis v. Hartford Life*, 217 F.R.D. 359, 361 (E.D. Pa. 2003)(emphasis added). Although Flowers was an agent of "Butch Maki & Associates" when she signed for the complaint, Zokaites Properties points to nothing in the record which suggests that she was an agent of La Mesa. *Hemmerich Industries, Inc. v. Moss Brown & Co., Inc.*, 114 F.R.D. 31, 32 (E.D. Pa. 1987)("The burden is on the plaintiff to show that service has been made upon a proper agent *of the corporation*.")(emphasis added). Since Flowers had no connection whatsoever with La Mesa, her acceptance of the certified mail containing a copy of the Complaint "did not constitute effective service under Pennsylvania law." *Lampe v. Xouth, Inc.*, 952 F.2d 697, 701 (3d Cir. 1991). The fact that Flowers may have ultimately passed the Complaint on to Maki is of no dispositive significance. *Hemmerich Industries*, 114 F.R.D. at 32.

Because Maki's "receipt of the complaint" did not constitute "formal service" upon La Mesa, the thirty-day clock applicable under § 1446(b) was not triggered on October 25, 2010. *Murphy Brothers*, 526 U.S. at 347-348. Consequently, this case cannot be remanded on the ground that La Mesa's notice of removal was filed too late. The only remaining question is whether La Mesa waived its right of removal by attempting to litigate this case in the Pennsylvania courts. [ECF No. 13 at ¶¶ 32-35].

A defendant may waive its right to remove a case by experimenting "with the merits" of the case in a state court before filing a notice of removal. *Haun v. Retail Credit Co.*, 420 F. Supp. 859, 863 (W.D. Pa. 1976). Given the "absolute" nature of a defendant's right of removal, however, a waiver will be found only where the actions taken by a defendant evince a clear intent to litigate the case in a state forum. *Mancari v. AC&S Co., Inc.*, 683 F. Supp. 91, 93-94 (D. Del. 1988). The filing of the petitions to strike and open the default judgment did not

constitute a waiver of La Mesa's right to remove this case, since those petitions did not relate to the merits of Zokaites Properties' underlying contractual claim. *Liebau v. Columbia Casualty Co.*, 176 F. Supp. 2d 1236, 1244 (D. Kan. 2001). Shortly after filing its "precautionary" notice of appeal, La Mesa sought an order from the Superior Court clarifying that the Pennsylvania courts had no jurisdiction in this case. [ECF No. 30-1 at 2]. Although the Superior Court did not issue the requested order, La Mesa was permitted to rely on the removal as a basis for challenging the jurisdiction of the Pennsylvania courts. [*Id.*]. The Superior Court ultimately concluded that it had no jurisdiction to adjudicate La Mesa's appeal precisely because the case was still pending in this Court. [ECF No. 58-2 at 19-21]. It is doubtful that actions taken by a defendant *after* a notice of removal has already been filed can waive the already-invoked right to remove. Even if such a *post hoc* wavier is possible, it did not occur in this case. In view of the fact that La Mesa consistently maintained that the removal had divested the Pennsylvania courts of subject-matter jurisdiction to proceed further, the "preliminary conduct" engaged in by La Mesa did not constitute a waiver of its right to remove the case to this Court. *Haun*, 420 F. Supp. 2d at 863. The motion to remand will be denied. [ECF No. 13 at ¶¶ 23-35]. Since the case will not be remanded, Zokaites Properties' request for an award of costs and counsel fees is moot. [*Id.* at ¶¶ 36-39].

## V.    CONCLUSION

When a case pending in a state court is removed to a federal district court, any orders entered by the state court "remain in full force and effect until dissolved or modified by the district court." 28 U.S.C. § 1450. Since the case has been removed to this Court, however, the actions taken by the parties from this point forward must be in accordance with the Federal Rules of Civil Procedure. *Granny Goose Foods, Inc. v. Brotherhood of Teamsters & Auto Truck*

*Drivers*, 415 U.S. 423, 437-438 (1974). If La Mesa wishes to attack the default judgment[16] entered by the Court of Common Pleas of Allegheny County, it must do so in a way that conforms to federal law. *Tarbell*, 856 F. Supp. at 104; *Kizer v. Sherwood*, 311 F. Supp. 809, 811-812 (M.D. Pa. 1970). The Court will not rule on the petitions to strike and open the default judgment filed in the Court of Common Pleas. [ECF Nos. 6 & 65]. The relevant procedural issues are no longer governed by Pennsylvania law. *Tarbell*, 856 F. Supp. at 104-105.

La Mesa correctly points out that it was never properly served with the Complaint while this case was still pending in the Court of Common Pleas. [ECF No. 14 at 3-7]. The lack of service did not render the removal improper. A defendant need not await formal service to remove a case. *Delgado v. Shell Oil Co.*, 231 F.3d 165, 177 (5th Cir. 2000); *Middlebrooks v. Godwin Corp.*, 279 F.R.D. 8, 11-12 (D.D.C. 2011); *Watanabe v. Lankford*, 684 F. Supp. 2d 1210, 1214-1215 (D. Haw. 2009); *North v. Precision Airmotive Corp.*, 600 F. Supp. 2d 1263, 1270 (M.D. Fla. 2009); *Arthur v. Litton Loan Servicing LP*, 249 F. Supp. 2d 924, 931 (E.D. Tenn. 2002). Service of process can be completed after a case has already been removed. 28 U.S.C. § 1448. The defense of "insufficient service of process" is subject to waiver.[17] FED. R. CIV. P. 12(b)(5), (h)(1). If need be, the Court can entertain a motion to "extend the time for service for an appropriate period." FED. R. CIV. P. 4(m); *Petrucelli v. Bohringer & Ratzinger*, 46 F.3d 1298, 1304-1308 (3d Cir. 1995); *United States ex rel. Thomas v. Siemens AG*, 708 F. Supp. 2d 505, 520-521 (E.D. Pa. 2010).

It is expected that, from this point forward, the parties will cooperate in good faith "to secure the just, speedy, and inexpensive determination" of this controversy. FED. R. CIV. P. 1.

---

[16] The Superior Court has already determined that the Court of Common Pleas did not have jurisdiction to enter the order denying La Mesa's petitions to strike and open the default judgment. [ECF No. 58-2 at 19-21].

[17] La Mesa did not waive this defense by filing a notice of removal. *Leach v. BB&T Corp.*, 232 F.R.D. 545, 550-551 (N.D.W. Va. 2005); *Kiro v. Moore*, 229 F.R.D. 228, 231 (D.N.M. 2005).

Since the *Rooker-Feldman* doctrine does not preclude this Court from exercising subject-matter jurisdiction in the present case, the motion to dismiss filed by Zokaites Properties will be denied. [ECF No. 22]. Given that La Mesa was never formally served with process in this case, Zokaites Properties' motion to remand will also be denied. [ECF No. 13 at ¶¶ 23-35]. The request for an award of costs and counsel fees will be denied on the ground that it is moot. [*Id.* at ¶¶ 36-39]. No opinion is expressed as to whether La Mesa is in breach of its contractual obligations to Zokaities Properties. The Court holds only that the arguments advanced by Zokaites Properties at this stage are lacking in merit, and that a remand to the Court of Common Pleas of Allegheny County is not warranted.

BY THE COURT,

/s/ Maureen P. Kelly
MAUREEN P. KELLY
UNITED STATES MAGISTRATE JUDGE

Date:  August 1, 2012

cc:    All counsel of record via CM/ECF